IN THE CASE OF


UNITED STATES, Appellee

v.

Judy A. HALL, Sergeant
U.S. Army, Appellant

No. 02-0243/AR

Crim. App. Dkt. No. ARMY 9901124

United States Court of Appeals for the Armed Forces

Argued November 6, 2002

Decided February 12, 2003

ERDMANN, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., GIERKE, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:  Captain Linda A. Chapman (argued); Major
Jeanette K. Stone, Lieutenant Colonel E. Allen Chandler
Jr., and Colonel Robert D. Teetsel (on brief); Colonel
Adele H. Odegard and Major Mary M. McCord.

For Appellee:  Major Mark L. Johnson (argued); Lieutenant
Colonel Margaret B. Baines, Lieutenant Colonel Lauren B.
Leeker, and Captain Tami L. Dillahunt (on brief); Captain
Theodore C. Houdek.

Military Judge:  Stephen R. Henley and Patrick J. Parrish

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION**

Judge ERDMANN delivered the opinion of the Court.

Appellant, Sergeant Judy A. Hall, United States Army, was tried by special court-martial at Fort Sill, Oklahoma. Contrary to her plea, she was convicted of a single specification alleging the wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (2002). Appellant was sentenced by officer members to a bad-conduct discharge and reduction to E-1. The convening authority approved the sentence. The Army Court of Criminal Appeals affirmed the findings and the sentence in a memorandum opinion on November 5, 2001.

We granted review of the following issues:

I

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION AND SUBSTANTIALLY PREJUDICED APPELLANT'S RIGHT TO A FAIR TRIAL AND HER SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES AGAINST HER BY ADMITTING APPELLANT'S MOTHER'S INADMISSIBLE HEARSAY STATEMENTS, OFFERED UNDER THE GUISE OF IMPEACHMENT, WHERE THE OBVIOUS PRIMARY GOVERNMENT PURPOSE WAS TO PLACE INADMISSIBLE HEARSAY BEFORE THE MEMBERS.

II

WHETHER, AFTER ASSUMING THAT THE MILITARY JUDGE ERRED BY ADMITTING APPELLANT'S MOTHER'S INADMISSIBLE HEARSAY STATEMENTS, THE ARMY COURT ERRED WHEN IT HELD THAT APPELLANT SUFFERED NO PREJUDICE FROM ADMISSION OF THAT TESTIMONY.

III

WHETHER, AFTER ASSUMING THAT THE MILITARY JUDGE
ERRED BY ADMITTING APPELLANT'S MOTHER'S
INADMISSIBLE HEARSAY STATEMENTS, THE ARMY COURT
ERRED WHEN IT HELD THAT THE EVIDENCE OF
APPELLANT'S GUILT PROPERLY BEFORE THE COURT WAS SO
GREAT AS TO MAKE ADMISSION OF SA MILL'S TESTIMONY
HARMLESS BEYOND A REASONABLE DOUBT.

Prior to oral argument in this case, the Government filed a supplemental pleading conceding "that the military judge erred by admitting [Appellant's] mother's statements through SA Mills, for the purpose of impeaching, by contradiction, appellant's testimony." Upon considering the record of trial, we accept this concession as reasonable and correct. We further find that this error was of constitutional dimension and that it was not harmless beyond a reasonable doubt. We reverse.

## Facts

As a result of a positive urinalysis, Appellant was charged with a single specification of wrongful use of cocaine between on or about February 19, 1999 and on or about February 22, 1999. Testing of Appellant's urine revealed the presence of the cocaine metabolite, Benzoylecgonine, at a level of 480 nanograms.[1] Appellant stipulated that the substance

---

[1] The Department of Defense cut-off level for reporting a positive test for this metabolite is 100 nanograms.

tested was her urine, that it had been properly handled, and that the testing had accurately reported the presence of the cocaine metabolite in her urine. Additionally, the Government presented the testimony of an expert in forensic toxicology to explain drug testing methodologies and the litigation packet pertaining to the testing of Appellant's urine sample.

Anticipating an innocent ingestion defense, the Government presented evidence that Appellant had tested positive for cocaine use during a partial unit urinalysis conducted in January 1999, a month before the urinalysis leading to the charged offense. Those test results indicated a metabolite level of 162 nanograms. Appellant was given nonjudicial punishment for this initial positive urinalysis. Concerning this January urinalysis, Appellant told her commander, Captain Brian Pierce, that she thought the result was due to some prescription drugs. A check of Appellant's medical records failed to show that she was taking prescription drugs and Appellant could not produce the prescriptions. Captain Pierce testified that Appellant did not offer any other explanation for the January 1999 positive test result, including innocent or unknowing ingestion of a substance that might lead to a positive urinalysis.

The Government also presented testimony from a friend and member of Appellant's unit, Sergeant Natalie Smith. Sergeant

4

Smith testified that after the January 1999 urinalysis, Appellant claimed to have taken "some stuff" at home because her back was sore and Appellant also commented that someone may have been out to get her.

As anticipated by the Government, Appellant did defend against the February 1999 charge by raising an innocent ingestion defense. The defense initially surfaced during cross-examination of the Government's expert in forensic toxicology, Dr. Catherine Okano. Dr. Okano testified that she could not determine from the urinalysis whether the ingestion was willful or innocent. She also acknowledged a study involving "Healthinca" tea, made from coca leaves that resulted in a positive test for cocaine at the Department of Defense cutoff 29 hours after the test subject drank the tea. The leaves in this study were allegedly "decocainized."

The defense presented expert testimony that lent credence to Appellant's defense. Dr. David Kuntz testified as an expert in pharmacology, toxicology, and forensic testing of urine samples. He related his personal experience with drug testing of National Guard troops. During this testing, one soldier tested positive for cocaine at a low level, under 300 nanograms after drinking "Trimate" tea, a tea made from "decocainized" coca leaves. The "decocainizing" process was only about 99% effective, and Dr. Kuntz testified that urinalysis test results

5

after drinking the tea could be "probably 500, even up to a thousand" nanograms.

Appellant took the stand in her own defense. She testified that her mother would give her herbal teas as a teenager to relieve Appellant's severe menstrual cycles. Appellant stated that in 1991 her mother sent "Trimate" tea to her in Germany to assist with weight control. There were 40 regular looking tea bags in the box. Appellant claimed that she drank some of the tea on January 26, 1999, before she gave her sample for the initial urinalysis, and she drank the tea again on February 21, before the urinalysis leading to the court-martial charge.

Prior to presenting its case in rebuttal, the Government informed the military judge that it had been unable to serve Appellant's mother with a subpoena or provide her travel payments. The Government then informed the military judge that it intended to call Special Agent (SA) Steven Mills of the Criminal Investigation Command, who had attempted to serve the subpoena on Appellant's mother. Special Agent Mills would testify that he had interviewed Appellant's mother, Mrs. Alan Boyd, and that she told him she had not given her daughter any teas. Special Agent Mills was also prepared to testify that Mrs. Boyd told him that she had not visited South or Central America.

The Government stated that it intended to offer this testimony either under Military Rule of Evidence 803(2) [hereinafter M.R.E.], as an excited utterance, or under M.R.E. 807, the residual hearsay rule. There ensued a discussion as to whether the Government had made reasonable efforts to produce Mrs. Boyd. Special Agent Mills was sworn and testified at a session pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a)(2002), about his efforts to interview Mr. and Mrs. Boyd, as well as his attempt to serve subpoenas upon them.

During the Government's arguments on admissibility, the military judge rejected the excited utterance theory. After hearing arguments, the military judge stated that he was "inclined not" to allow the Government to offer the testimony under the residual exception. However, he believed that SA Mills' testimony was admissible to "determine the credibility of the accused with regards to her statement when she testified that her mother sent her the tea."

When the trial resumed, the Government called SA Mills who testified about his conversations with Mrs. Boyd. Special Agent Mills testified that he went to the home of Appellant's mother. Although he did not formally question her, SA Mills did relate to Mrs. Boyd that he wanted to ask her if she "had ever provided her daughter any tea, if she had gone to South America or imported any tea from South America." Special Agent Mills

7

testified that in response "[s]he said no, she'd never given [Appellant] any tea." The military judge instructed the members that they could only consider the testimony "for the limited purpose to determine what impeachment value it has only concerning the accused's testimony that her mother sent her the tea. You may not consider it for the truth of Mrs. Boyd's statement that she did not send tea to the accused."

After SA Mills testified, Appellant resumed the stand. She testified that her mother had recently undergone two surgeries and had been rather emotional. Appellant also indicated that she had not brought her mother to trial so her mother would not have to go through the emotional ordeal and that she did not believe her mother would have answered the agent's question that way.


## Discussion

The Court of Criminal Appeals "assumed" that the military judge erred by admitting the statements attributed to Appellant's mother.[2] Nonetheless, that court found that the evidence "had no substantial influence on the members' findings" and that "the evidence of appellant's guilt properly before the

---

[2] The Army Court of Criminal Appeals assumed that the military judge erred by admitting hearsay evidence to impeach Appellant's credibility and did not address the substantive basis for that assumption. United States v. Hall, No. ARMY 9901124, slip op. at 1-2 (A. Ct. Crim. App. Nov. 5, 2001).

court was so great as to make [the] admission of SA Mills' testimony harmless beyond a reasonable doubt." United States v. Hall, No. ARMY 9901124, slip op. at 3 (A. Ct. Crim. App. Nov. 5, 2001). Appellant argues that the conclusions of the Army Court of Criminal Appeals are incorrect and that, absent the inadmissible hearsay, the members may well have held a reasonable doubt about Appellant's guilt.

Among the underpinnings of the hearsay rule is the fact that admitting hearsay can deprive the party against whom the evidence is offered the opportunity to test that evidence by cross-examination. Because the declarant is absent, the opponent cannot delve into matters such as memory, perception, bias, or motive during cross-examination. See California v. Green, 399 U.S. 149, 154 (1970). Additionally, the finder of fact cannot observe the demeanor and reaction of the declarant during cross-examination to assess what, if any, weight to give to the testimony of the declarant. Id. This right to cross-examination is at the core of the confrontation clause.

Despite this constitutional underpinning, not every instance in which hearsay is improperly admitted will rise to the level of a constitutional error. We have found errors in admitting hearsay that amount to nonconstitutional violations where an accused has had the opportunity to cross-examine the declarant. See United States v. Pablo, 53 M.J. 356, 359

9

(C.A.A.F. 2000)(citing United States v. Pollard, 38 M.J. 41, 52 (C.M.A. 1993); United States v. Lyons, 36 M.J. 183, 188-89 (C.M.A. 1992))(counselor's testimony about child's statements inadmissible, but error was nonconstitutional because accused had the opportunity to cross-examine the child). In this case, however, Appellant was deprived of the opportunity to cross-examine the declarant.

The Government sought to subpoena Appellant's mother and father as Government witnesses after Appellant served notice of her innocent ingestion defense. Although SA Mills made contact with Appellant's mother and father and did serve written subpoenas, the Government failed to perfect those subpoenas by tendering payment for travel. Consequently, Appellant's mother did not appear at trial as a Government witness.

When the words of Appellant's mother were presented through the testimony of SA Mills, Appellant made a timely objection, contending that the proffered evidence was inadmissible hearsay. Although the military judge found no applicable exception to the hearsay rule, he admitted the evidence as impeachment by contradiction, apparently finding that the evidence was not being used for the truth of the matter asserted if used in that manner. The military judge instructed the members consistent with that determination. In light of the record and the Government's concession, we agree that ruling was wrong.

Inadmissible hearsay was improperly introduced over timely objection.

Thereafter the Government pitted Appellant against her own mother without affording Appellant the opportunity to test the reliability or trustworthiness of her mother's statements by cross-examination. Appellant was denied her constitutional right of confrontation through cross-examination.

As this error impacted Appellant's constitutional rights, we cannot affirm the findings unless we determine beyond a reasonable doubt that the error did not contribute to the findings of guilty. United States v. Walker, 57 M.J. 174, 178 (C.A.A.F. 2002). "Our focus is not on whether the members were right in their findings but, rather, on whether the error had or reasonably may have had an effect upon the members' findings." United States v. Bins, 43 M.J. 79, 86 (C.A.A.F. 1995). The Government bears the burden of establishing that constitutional error is harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967); United States v. Hall, 56 M.J. 432 (C.A.A.F. 2002); United States v. Lewis, 51 M.J. 376 (C.A.A.F. 1999); United States v. Mitchell, 51 M.J. 234 (C.A.A.F. 1999). We examine all the circumstances to determine whether the error was harmless beyond a reasonable doubt. Deleware v. Van Arsdall, 475 U.S. 673, 684 (1986)("Whether such an error is harmless in a particular case depends upon a host of

11

factors."); <u>United States v. Sidwell</u>, 51 M.J. 262 (C.A.A.F. 1999); <u>United States v. Jones</u>, 49 M.J. 85 (C.A.A.F. 1998). Whether a constitutional error in admitting evidence is harmless beyond a reasonable doubt is a question of law that will be reviewed de novo. <u>Arizona v. Fulminante</u>, 499 U.S. 279, 295-96 (1991); <u>United States v. Grijalva</u>, 55 M.J. 223 (C.A.A.F. 2001); <u>United States v. George</u>, 52 M.J. 259 (C.A.A.F. 2000). After a thorough review of the record and consideration of the briefs and arguments of the parties to this appeal, we find that this error was not harmless beyond a reasonable doubt.

We find that the statements attributed to Appellant's mother were inescapably considered for the truth of the matter stated therein. To "contradict" very simply means "to assert the contrary of." <u>Merriam-Webster Unabridged Dictionary</u> (2003). The members could not have found contradiction of Appellant's testimony without considering the hearsay as fact contrary to Appellant's in-court testimony. The manner in which this evidence was put before the members would inevitably cause it to be considered for the truth of the matter stated. The military judge's purported limiting instruction, as given, was impossible to apply and could only confound the members. Thus the instruction given did nothing to remedy or reduce the effect of the error.

12

We note that the Government's case was predicated on a positive urinalysis and supporting expert testimony. We have said that evidence of urinalysis tests, their results, and expert testimony explaining them is sufficient to permit a fact-finder to find beyond a reasonable doubt that an accused used contraband drugs. United States v. Harper, 22 M.J. 157, 159 (C.M.A. 1986). The factfinder may draw a permissible inference of wrongfulness from a circumstantial showing of drug use based on such evidence. Id. This evidence is legally sufficient as long as the defense evidence of innocent ingestion could be reasonably disbelieved by the factfinder. United States v. Ford, 23 M.J. 331, 334 (C.M.A. 1987); see also United States v. Bond, 46 M.J. 86 (C.A.A.F. 1997). "Urinalysis" is not, however, a synonym for "conviction." There was present in this case other evidence that sought to challenge the Government's inference of wrongfulness.

Appellant sought to raise a reasonable doubt about the wrongfulness element of the offense through an innocent ingestion defense. Appellant testified about a specific time and source to explain the presence of the cocaine metabolite in her urine. This defense was not based solely on Appellant's testimony about drinking the tea. The defense provided expert testimony to lend credence to the defense. The expert had specific experience with "Trimate" tea producing positive

13

urinalysis results for cocaine.  In fact, even the Government's expert acknowledged a study pertaining to positive drug test results following ingestion of certain teas.

It is against the evidentiary backdrop of this defense that the statement attributed to Appellant's mother was introduced. Short of Appellant repudiating her own testimony, it is difficult to imagine anything that could more decimate this defense.  The factual contradiction presented by this inadmissible hearsay came from the mouth of Appellant's own mother.   Any possible hope of raising a reasonable doubt through an innocent ingestion defense was purposefully dismantled by the Government's hearsay evidence.  What remained of the innocent ingestion defense was further eviscerated by the paradoxical instruction.  Even though failing to properly secure the live testimony of Mrs. Boyd, the Government brought Appellant's mother to the forefront in this trial and used inadmissible hearsay in an effort to undermine any credibility Appellant might have had.  In essence, through inadmissible hearsay, the visage of Appellant's mother pointed an accusing finger at her own daughter.

Given the nature of the factual contradiction, and in particular, the fact that the source of the contradiction came from the mouth of Appellant's own mother, and given the confounding nature of the military judge's instruction, we

14

cannot determine beyond a reasonable doubt that the error did not contribute to the finding of guilt.

## Decision

The decision of the Army Court of Criminal Appeals is reversed.  The findings and sentence are set aside.  The record is returned to The Judge Advocate General of the Army.  A rehearing may be ordered.