BAKER, Judge
(concurring in part and dissenting in part):
I concur in the majority’s treatment of Appellant’s conviction under Article 133, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 933 (2000). However, for the reasons stated below, I respectfully dissent from the majority’s analysis regarding Appellant’s conviction under Article 128, UCMJ, 10 U.S.C. § 928 (2000).
A the majority recounts, the Court of Criminal Appeals determined that the search of Appellant’s apartment, resulting in the discovery of his letter to Private First Class (PFC) W, violated Appellant’s Fourth Amendment rights. A a result, the letter should have been suppressed at trial. Since this was a constitutional error, the question before this Court is whether the admission of the letter was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); United States v. Hall, 58 M.J. 90, 94 (C.A.A.F.2003). The Government bears the burden of demonstrating that a constitutional error is harmless beyond a reasonable doubt. Chapman, 386 U.S. at 24, 87 S.Ct. 824; Hall, 58 M.J. at 94. On these two points the case law is consistent and clear. Thus, in Chapman the Supreme Court stated, “The beneficiary of a constitutional error [must] prove beyond a reasonable doubt that the error complained of did not contribute to *492 the verdict obtained.”[1] Chapman, 386 U.S. at 24, 87 S.Ct. 824. In ruling for the appellant in that case, the Supreme Court also considered the strength of the Government’s case absent the constitutional error. The Court concluded that “though the case in which this occurred presented a reasonably strong ‘circumstantial web of evidence’ against petitioners, it was also a case in which, absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts.” Id. at 25-26, 87 S.Ct. 824 (citation omitted). See also Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)(“Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the two confessions on the minds of an average jury.”).
Subsequent to Chapman, the Supreme Court and our Court have emphasized different facets of the Chapman analysis. In Arizona v. Fulminante, the Supreme Court said, “The Court has the power to review the record de novo in order to determine an error’s harmlessness. In so doing, it must be determined whether the State has met its burden of demonstrating that the admission of the [coerced] confession ... did not contribute to Fulminante’s conviction.” 499 U.S. 279, 295-96, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (citations omitted)(emphasis added). We adopted the same point of emphasis in United States v. Grooters, 39 M.J. 269 (C.M.A.1994). In weighing the strength of the Government’s case against the taint of constitutional error, we stated, “The Government ... must exclude the ‘reasonable possibility that the evidence complained of might have contributed to the conviction.’ ” Id. at 273 (quoting Fahy, 375 U.S. at 86-87, 84 S.Ct. 229)(emphasis added).
However, in Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) the Supreme Court focused not only on the contribution of the tainted evidence, but also on the strength of the Government’s case and therefore the impact of the tainted evidence: ‘We think, therefore, that the harmless-error inquiry must be ...: Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?” Id. at 18, 119 S.Ct. 1827. In Hall, we did the same, noting that the focus of the Chapman inquiry is “on whether the error had or reasonably may have had an effect upon the members’ findings.”[2] Hall, 58 M.J. at 94 (emphasis added)(quoting United States v. Bins, 43 M.J. 79, 86 (C.A.A.F.1995)). See also United States v. Grijalva, 55 M.J. 223, 228 (C.A.A.F.2001)(admission of tainted evidence harmless beyond a reasonable doubt because it “was not a significant factor in the determination whether appellant was guilty of the greater or lesser offense” and powerful and uncontested evidence of guilt was otherwise presented.)
The difference in focus between these cases is important, if not determinative, as to how harmless error analysis applies in Appellant’s case. Appellant’s letter was integral to the Government’s theory of the ease. Appellant argued self-defense and the Government countered by using the letter to suggest that Appellant had a motive to beat PFC W, *493 notwithstanding his claim of self-defense. Thus, if one focuses on whether the letter “contributed” to Appellant’s conviction, it would be impossible to conclude otherwise.
Such contribution is incalculable. In theory, all evidence presented at trial “contributes” in some manner to a panel’s consideration of the case, including where it is discounted, but nonetheless informs a panel’s decision to give greater weight to other evidence. Thus, I have no doubt that the presentation of Appellant’s letter by the Government contributed to the verdict in this case. Portions of the letter were read aloud to the panel during Appellant’s testimony. The panel read the letter. There is, therefore, no way of knowing beyond a reasonable doubt that it did not “contribute” in some manner to their verdict.
In my view, however, Chapman and Neder require appellate courts to focus on the impact of the tainted evidence on the verdict as the measure of the tainted evidence’s potential “contribution.”[3] See Chapman, 386 U.S. at 24, 87 S.Ct. 824; Neder, 527 U.S. at 18, 119 S.Ct. 1827. Otherwise, there would be no need for harmless error analysis since we would never be able to disaggregate the relative contribution of one piece of evidence over another without polling the members and opening jury deliberations to appellate inspection. This was the view of Justice Harlan’s dissent in Chapman. See 386 U.S. at 55, 87 S.Ct. 824. The Supreme Court, however, could not have intended this result or it would not have upheld the Chapman line of harmless error cases.
The Neder-Hall impact test leads to a review of other evidence in this case and, in my view, a different conclusion than that reached by the majority. See Neder, 527 U.S. at 18, 119 S.Ct. 1827; Hall, 58 M.J. at 94. Appellant’s self-defense argument rested upon the nature of his prior altercations with PFC W, the fact that Specialist (SPC) Dewit, the friend who accompanied PFC W to the apartment, had seen Appellant pinned against the window by PFC W’s forearm, and the potential that PFC W could have fractured his skull by hitting his head on a wooden bar in the back of the bedroom, as opposed to as a direct result of Appellant’s blows. Nevertheless, the evidence against Appellant of assault consummated by a battery was significant and substantial. This is not a case like Grooters where the only evidence was derivative of the tainted evidence. 39 M.J. at 273.
• First, SPC Dewit, intervened to break up the fight between Appellant and PFC W at the point where PFC W had Appellant pinned against the window with his forearm. Thus, at this point, Appellant had the opportunity to walk away from any threat he may have felt from PFC W. SPC Dewit also indicated that tempers did not seem to be exceedingly flared so it was easy for him to break up the fight.
• Second, PFC W’s medical injuries were extensive. Doctors and police testified they had never seen anyone beaten this badly without the use of a weapon. Moreover, the injuries were a product of repeated blows, not a singular traumatic strike. In contrast, Appellant’s injuries consisted of one broken knuckle.
• Third, Appellant told the police that the individual he had the fight with had already left the apartment. Officer Fox testified that Appellant told his mother over the phone, PFC W “came in and started some shit, and I beat his ass down bad.” Appellant also testified that he “may” have hit PFC W while PFC W was on the ground.
After weighing the strength of the Government’s case against the potential contribution of the tainted evidence, I am convinced beyond a reasonable doubt that a rational panel would have found Appellant guilty of assault consummated by battery absent the error. See Neder, 527 U.S. at 18, 119 S.Ct. 1827. Therefore, I respectfully dissent in part.

. The Supreme Court stated, "We prefer the approach of this Court in deciding what was harmless error in our recent case of Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 [(1963)]. There we said: 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' ” Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (citation omitted). The Court went on to state that "[t]here is little, if any, difference” between the Fahy test and theb Chapman test "that the error complained of did not contribute to the verdict obtained.” Id. at 24, 87 S.Ct. 824. Of course, the Chapman formulation omits the qualifications "reasonable possibility" and "might have” that are found within the Fahy test. See id. at 23-24, 87 S.Ct. 824; Fahy, 375 U.S. at 86-87, 84 S.Ct. 229.

. In Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Supreme Court applied a per se rule of prejudice where the jury was provided an unconstitutional reasonable doubt instruction. There the Court determined that application of the Chapman harmless error review was illogical where the jury's verdict was itself a nullity. 508 U.S. at 280, 113 S.Ct. 2078. "The Sixth Amendment requires more than appellate speculation about a hypothetical jury’s action, ...; it requires an actual jury finding of guilty.” Id.

. The constitutional error in this case was not of the nature suggested in Sullivan where the error went to the underlying validity of the court-martial itself. In that situation, a harmless error analysis is illogical and should be precluded. See 508 U.S. at 280, 113 S.Ct. 2078.