OPINION OF THE COURT
SMITH, Judge:
Contrary to his pleas, the appellant was convicted by officer and enlisted members of attempting to steal money by false pretenses (Charge I), in violation of Article 80, UCMJ, 10 U.S.C. § 880; stealing money by false pretenses (Charge II), in violation of Article 121, UCMJ, 10 U.S.C. § 921; and possession of child pornography (Charge III), in violation of Article 134, UCMJ, 10 U.S.C. § 934.
The appellant asserts nine errors:
I. WHETHER IT WAS ERROR FOR THE MILITARY JUDGES TO ADMIT THE PRIOR TESTIMONIAL STATEMENTS OF MRS. AMY JOHNSTON, APPELLANT’S WIFE, AS SUBSTANTIVE EVIDENCE OF APPELLANT’S GUILT.
II. WHETHER THE MILITARY JUDGE’S ERRONEOUS ADMISSION OF HEARSAY SUBSTANTIALLY PREJUDICED APPELLANT’S RIGHT TO CONFRONTATION UNDER THE SIXTH AMENDMENT.
III. WHETHER THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE DISCOVERY REQUEST FOR THE VOLUMINOUS RECORDS RELIED ON BY MR. DEAN MASON TO PREPARE PROSECUTION EXHIB *664 ITS 44, 45, AND 70, AND DURING HIS TESTIMONY.
IV. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY ADMITTING PROSECUTION EXHIBIT 217, THE TRANSCRIPT OF AN INTERNET CHAT SESSION, UNDER MIL. R. EVID. 404(b).
V. WHETHER THE MILITARY JUDGE ERRED BY ABANDONING HIS IMPARTIAL ROLE AND BECOMING A PARTISAN ADVOCATE FOR THE GOVERNMENT DENYING APPELLANT A FAIR TRIAL.
VI. WHETHER THE MILITARY JUDGE ERRED WHEN HE REFUSED TO RECUSE HIMSELF AND DECLARE A MISTRIAL.
VII. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE OVERRULED DEFENSE OBJECTION TO THE TESTIMONY OF SA [SPECIAL AGENT LOUIS] PER-RET, THE GOVERNMENT’S EXPERT ON CHILD ABUSE INVESTIGATION AND CHILD PORNOGRAPHY.
VIII. WHETHER APPELLANT WAS SUBSTANTIALLY PREJUDICED BY TRIAL COUNSEL’S IMPROPER SENTENCING ARGUMENT.
IX. WHETHER THE FINDINGS AND SENTENCE SHOULD BE SET ASIDE UNDER THE CUMULATIVE ERROR DOCTRINE.
Appellate government counsel concede error on Issues I, VII, and VIII, but ask that we affirm Charge III and its Specification.[1] They request that we return the record to the convening authority for consideration of whether to conduct a rehearing on Charges I and II and, in any event, to conduct a new sentencing proceeding. We decide instead to grant the relief the appellant requests by setting aside the findings and sentence in their entirety. The members sentenced thé appellant to a bad-conduct discharge, confinement for 18 months, forfeiture of all pay and allowances and reduction to E-l. The convening authority approved the findings and sentence as adjudged.

Background

The appellant was convicted of stealing approximately $8,000, and attempting to steal nearly $30,000 more, through a debit card withdrawal scheme. The scheme was discovered when bank personnel linked debit cards transactions to government computers in the appellant’s unit and notified the Air Force Office of Special Investigations (AFOSI). AFOSI agents received authorization to search the appellant’s government quarters, where they seized evidence related to the debit card scheme and, unexpectedly, computer media that contained what they believed to be child pornography.
Just prior to the search, AFOSI agents separately, but simultaneously, interviewed the appellant and his wife. Mrs. Amy Johnston made oral and written statements to AFOSI investigators that the trial defense counsel moved to suppress. Mrs. Johnston’s oral statements were consistent with her three-page written statement. She wrote, in part:
My husband and I have in the past been short on cash, barely scraping by some times. We have gotten some deposits in our account at U.S. Bank that I didn’t know about. When I confronted my husband, he told me on several occations [sic] that the money had come from profits. He’d sell something for a large amount of money and go and buy it for cheaper, having it shipped to tohomever bought it. I was scepticle [sic] at first. But we did need the extra money and he can’t get a second job. I can’t work cause I’m pregnant, plus child care would run so high it wouldn’t be worth it. The money was always spent so quickly I didn’t have much time to worry about where it came from. I honestly had no idea that there were credit card numbers being used. I thought that what my husband was doing was legal. I don’t want to believe that my husband would risk getting my mother involved in anything illegal.... The items that we received at our home or PSC box were a TV lamp, DVD’s (through Columbia house or some thing I thought) and there *665 may be others. I was told they were either to be sold again or on some things, a cd burner, I was told it was purchased with money he’d made online and the money came from Net bank, from his profits of buying and selling. My husband could of stolen [sic] the mastercard numbers from my mom while we were at her house____If I had to estimate the amount of money I didn’t know about I’d say it was around $4000.00 total over I don’t know how long. Maybe I should of pryed [sic] more, been more suspisious [sic]. But I love Abel and want to believe all he tells me.
(Emphasis added.)
The defense moved to suppress Mrs. Johnston’s statement because they expected she would not be available to testify and, as a result, the appellant would be denied his right to confront her. They also contended the statement was not admissible as residual hearsay under Mil. R. Evid. 807. In the alternative, the defense moved that certain statements be held inadmissible as covered by the spousal privilege in Mil. R. Evid. 504(b)(1).
Judge Linda Murnane granted the defense motion in part. She made detailed findings, concluding that Mrs. Johnston was unavailable because (1) she was not amendable to process, (2) would not appear voluntarily, and (3) if she did appear, the appellant “would assert his privilege to prevent her from disclosing any marital communications” under Mil. R. Evid. 504(b)(3). The military judge granted the defense motion as to communications the appellant made to his wife regarding the family’s financial matters, ruling that certain oral statements she made to AFOSI and the italicized portions of her written statement were inadmissible. The military judge found the remaining statements by Mrs. Johnston admissible under Mil. R. Evid. 807 and Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).
It became apparent during the pretrial sessions that counsel for both sides had underestimated, for scheduling purposes, the time it would take to try the ease. As a result, two different military judges were detailed to preside over the eight-day proceeding. Judge Murnane presided over the pretrial session, including arraignment and a number of motions over the course of three days. Judge Thomas Pittman presided over the remainder of the proceeding. Judge Pittman’s rulings form the basis of this appeal.
After opening statements and the testimony of two AFOSI agents, Judge Pittman became concerned that the defense was trying to “have it both ways” by claiming the spousal privilege and portraying Mrs. Johnston as the perpetrator. He decided, sua sponte, “to fashion a remedy ... for what appears to be either some miscommunication in regard to the ruling on [Mrs. Johnston’s written statement] or to prevent what in the worst case scenario could be viewed as a fraud on the court.”
The military judge went on to note there were a variety of remedies open to him, from:
[S]imply allowing the trial counsel to put in the unredacted version of the statement to probably the harshest remedy which would be to just shut down that defense____But I do intend to remedy this situation to some degree because it’s simply not fair to the United States that the accused assert this marital communication privilege on one representation, and then the defense in the case exploit that situation in a way that really to put it as politely as I can, misleads the court.
He then admitted the unredacted version of Mrs. Johnston’s statement and fashioned, over defense objection, an instruction to the members on the claim of privilege.[2]

Discussion

1. Testimonial Statements
This ease was tried before the Supreme Court decided Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Mrs. Johnston’s oral and written statements to AFOSI investigators were tes *666 timonial in nature and inadmissible under Crawford given her unavailability at trial. See, e.g., United States v. Taylor, 62 M.J. 615, 618-19 (A.F.Ct.Crim.App.2005).
Relatively few military opinions cite Crawford. Even where Crawford has obviously been applied, the opinions do not squarely address Crawford’s retroactive applicability.[3] We conclude that Crawford applies to cases tried before Crawford, but that are not yet final within the meaning of Article 76, UCMJ, 10 U.S.C. § 876. See Schriro v. Summerlin, 542 U.S. 348, 351-52, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); United States v. Avila, 27 M.J. 62, 65 (C.M.A.1988).
This error is constitutional in nature; therefore, “we cannot affirm the findings unless we determine beyond a reasonable doubt that the error did not contribute to the findings of guilty.” United States v. Hall, 58 M.J. 90, 94 (C.A.A.F.2003) (citing United States v. Walker, 57 M.J. 174, 178 (C.A.A.F.2002)). Appellate government counsel concede that admission of Mrs. Johnston’s statements prejudiced the appellant, and we agree. Since her statements contributed to the findings on Charges I and II, those charges must be set aside.[4]
2. Transcript of Internet Chat Session
In the initial pretrial session, Judge Mur-nane granted a defense motion to preclude the government from using the three and a half page Internet chat session transcript found on the computer media seized during the search of the appellant’s quarters. The trial defense counsel’s written motion to preclude admission described the transcript as containing:
“what purports to be an Internet chat session between [the appellant], two of his friends named David and Jon, and a 14-year-old girl. The transcript contains references to rape, gang rape, forcible sodomy, kidnapping, carnal knowledge, indecent acts with a child, indecent acts with another, and intentionally inflicting sexual partners with [sexually transmitted diseases], including AIDS.”
Judge Murnane found the probative value to be “slight,” and she concluded the real problem was the “highly inflammatory” nature of the evidence in terms of Mil. R. Evid. 403. After ruling it was inadmissible, Judge Murnane advised counsel that, “should the government believe that events require that this ruling be re-visited in the course of the trial, they are free to ask that this ruling be reconsidered, and if they elect to do so, you are directed to do so in an Article 39(a) session[, 10 U.S.C. § 839(a)].”
Six days later, shortly after the defense rested its case and the government announced that it had no rebuttal evidence, Judge Pittman convened an Article 39(a), UCMJ, session and announced:
Let me raise an issue here that I need the views of the parties on-separate from instructions. The court is re-looking at the prior judge’s ruling on this Internet chat session. In considering the defense that’s been raised in this ease, the court is inclined to take the view that the prior judge’s ruling was incorrect and I want the parties’ input on that. Specifically, just to put it plainly what I’m talking about here is giving the government the opportunity to reopen their case and offer this Internet chat session because it goes directly to the issue of knowledge on the part of the accused---- The entire defense in this case has been that some other person did it. I believe if the prior judge had known that this would be the defense in this ease that her ruling would not have been as it was and I think now her [Mil. R. Evid.] 403, certainly her [Mil. R. Evid.] 401 ruling is called into question and I want the views of the parties.
Recognizing the opportunity presented to him, the trial counsel asked to reopen the government’s case. The trial defense counsel objected and renewed their motion for a mistrial.[5] Finding no circumstances that *667 cast substantial doubt on the fairness or impartiality of the proceedings, Judge Pittman denied the motion for a mistrial. He allowed the government to present the transcript as rebuttal evidence to show the appellant was speaking to someone who purported to be 14 years old and “enough of the transcript that follows to show at least a prurient sexual interest of the accused in minors.”
While the most inflammatory portions of the transcript were redacted, uncharged misconduct remained (e.g., soliciting indecent acts with a child, indecent language). The military judge considered the risk of unfair prejudice. in arriving at the scope of the redacted transcript, but he did not assess the unredacted portions under Mil. R. Evid. 404(b), nor did he provide the members with a limiting instruction regarding the evidence.
We review a military judge’s decision to admit or exclude evidence under an abuse of discretion standard. United States v. McDonald, 59 M.J. 426, 430 (C.A.A.F.2004); United States v. Tanksley, 54 M.J. 169, 175 (C.A.A.F.2000). ‘We will not overturn a military judge’s evidentiary decision unless that decision was ‘arbitrary, fanciful, clearly unreasonable,’ or ‘clearly erroneous.’” McDonald, 59 M.J. at 430 (quoting United States v. Miller, 46 M.J. 63, 65 (C.A.A.F.1997)).
We have tested admissibility under the three-pronged test of United States v. Reynolds, 29 M.J. 105, 109 (C.M.A.1989), and conclude the transcript as redacted was inadmissible. We find the probative value of the transcript was substantially outweighed by the danger of unfair prejudice (third prong) and, based on the questionable circumstances about the chat room exchange raised during the pretrial motion practice, we are not convinced the court members were provided enough evidence from which they could reasonably find that the appellant engaged in the prior crime or act (first prong). See id. The military judge abused his discretion by admitting evidence of the uncharged misconduct in the transcript. In view of our following resolution of Issue V, we need not decide whether the error materially prejudiced the substantial rights of the appellant. See Article 59(a), UCMJ, 10 U.S.C. § 859(a).
3. The Impartiality of the Military Judge[6]
Appellate government counsel, rightly conceding the convictions of Charges I and II must be set aside, contend the child pornography charge should survive. Even if we were to find that the military judge abandoned his impartial role, they argue, that error combined with the other obvious errors still would not taint the guilty findings as to this charge. The government’s position is plausible based on the evidence; however, our review of the entire record convinces us that this is the rare case where judicial conduct impeaches the integrity of the proceedings.
We recognize the inherent limitations we face in “reading” a proceeding by reading the transcript of it; but we review a great many records. On occasion, a record stands out because of the tone or emotion reflected in the transcript, wholly apart from the alleged misconduct or the issues raised. This is such a case, and our resolution is especially unusual because the case does not involve a specific ground for disqualification,[7] an allegation of an improper or disqualifying relationship between the military judge and another person,[8] or extraordinary personal involvement by the military judge with a trial participant.[9] We find that Judge Pittman abandoned his impartial role in this ease solely on the basis of his actions and rulings during the trial.
In support of this assignment of error, the appellant lists a number of specific rulings and comments that reflect the military judge’s lack of impartiality. Of those, three reflect the pointed approach the military judge took with trial defense counsel, *668 but they provide no basis for relief individually or taken together.[10] A military judge certainly may ask questions of witnesses and interrupt counsel during opening statements and closing argument when necessary.
Our concern is threefold—two sua sponte evidentiary rulings by the military judge and his characterization, in front of the court members, of the testimony of a government witness.
a. Mrs. Johnston’s Statement
As described above, the military judge became concerned that the defense wanted to “have it both ways” by participating—somehow—in Mrs. Johnston’s unavailability and then implicating her in the debit card scheme. The military judge was right to be concerned, but his decision to proceed to a remedy was based on the speculative premise that the defense was involved in Mrs. Johnston’s unavailability. When litigating the admissibility of the statement before the first military judge assigned to the case, the parties agreed (and the judge found) that Mrs. Johnston was not amenable to process and would not appear voluntarily. The appellant never did exercise the spousal privilege under Mil. R. Evid. 504, and the defense did not concede that Mrs. Johnston herself would exercise it were she to appear.
Nevertheless, the second military judge determined, sua sponte, that the government’s interests were being harmed. After the trial defense counsel objected and attempted to explain how the defense was not trying to improperly exploit Mrs. Johnston’s unavailability, the military judge persisted: “I mean is that—doesn’t that seem like sort of trickery?” He went on to explain that he wasn’t accusing the trial defense counsel of doing anything illegal, immoral, or unethical, but after trial defense counsel moved for a mistrial, the military judge reminded counsel that he had the authority to “shut down defenses that would be perpetuating a fraud on the court.” This exchange followed:
DC: Well, Your Honor, but again as the court noted when I inquired before, the court noted that it did not believe the defense was perpetrating a fraud on the court, so I do not believe that that is an adequate, you know, that that is a proper subject of comment at this point, i[f] the court believe[s] that’s the case and the court can make that ruling for appropriate review by reviewing authorities down the road—
MJ: No. What the court said was that I did not view your actions as counsel as being unprofessional, unethical, and I forgot the third word you said was, but that’s what the court said.
DC: Well, Your Honor, if the court is stating you know that we were somehow— well basically what I’m hearing the court say now is it—the court does believe the defense was perpetrating a fraud—
MJ: You don’t need to speculate as to what the court is thinking. The court has been very clear as to what the court is thinking. I was very, very open in coming out and addressing this issue with the parties in a[n Article] 39(a) [UCMJ, session] so that I could get your views in characterizing this prior to the lunch hour exactly as it was, a concern that I wanted you to mull over. In fact I wanted you to think about it and not give a response right away so that you could consider it and that we could make—I could make the most appropriate action with deliberate reason and thought, and I think that’s what I’ve done.
DC: Well, Your Honor, I understand. I appreciate it and I don’t mean to quibble with the court. I’ve moved for a mistrial because I have serious concern about the ability of [the appellant] to get a fair trial based on the court’s actions so far.
MJ: Okay. Well, you know what the standard for a mistrial is. It’s a drastic reme-dy____What the court is doing in fact by raising this issue is preventing the fairness or impartiality of this trial to be cast in substantial doubt. It just so happens in *669 this instance, it’s fairness to the United States. So the motion for appropriate relief in the nature of a mistrial under [Rule for Courts-Martial (R.C.M.)] 915 is denied.
After this exchange, the military judge instructed the court members regarding the admission of Mrs. Johnston’s statements:
Okay, Mr. President, members of the court, this relates back to some testimony from this morning and some exhibits. Under the Military Rules of Evidence a person has a privilege to refuse to testify against their spouse. Even in instances where the rule does not apply, a person who resides overseas cannot be compelled by the legal process of this court to testify against her spouse. Furthermore, a person has a privilege during the marital relationship to refuse to disclose and to prevent another from disclosing any confidential communication made to the spouse of the person. The accused’s spouse has refused to testify against him at this proceeding. The Court has determined that you may now consider as facts in this case the entire statements made by Mrs. Johnston to [AFOSI Special Agent Todd] Lundmark, both oral and written. An un-redacted version of Prosecution Exhibit 40 [Mrs. Johnston’s statement], identified now as Prosecution Exhibit 38, has been admitted in this regard and Agent Lund-mark may be recalled to provide further testimony. I may give you further instructions on how you may appropriately consider the statements at the end of this proceeding.
Although the military judge did not instruct the members that Mrs. Johnston had claimed the Mil. R. Evid. 504 privilege, that was the clear implication following his reference to the privilege. His instruction did not include an explanation that the assertion of a privilege is entirely proper or that the members may not draw any adverse inference from it. See Department of the Army Pamphlet 27-9, Military Judges’ Benchbook, ¶ 7-21 (15 Sept 2002).[11]
b. Transcript of Internet Chat Room
As discussed above, the military judge raised the transcript issue sua sponte. By doing so, he effectively created a rebuttal case for the government after the trial counsel informed the court he had no further evidence to present. The military judge’s clear inclination to admit the transcript in some form met with a predictable response from the trial defense counsel:
DC: Your Honor, obviously we would object to that. At this time we would renew our motion for a mistrial. We believe that the military judge, the court in this case, has not been impartial. This is the second time on its own motion that the court has readdressed matters sua sponte that are adverse to the defense. The United States is represented by two able prosecutors and this has been twice now. First on the privileges with the wife, and now on a highly prejudicial piece of exhibit, because the prosecution didn’t ask it to be reconsidered. I’m just requesting a mistrial because I don’t think [the appellant], if this piece of evidence is admitted, that anyone can concede that he’s gotten a fair trial under these circumstances.
MJ: So you don’t want to address the merits of the issue?
DC: I will. I’ll go back and address the merits, Your Honor. It sounded to me like the court had made its own decision.
MJ: I think I started off this hearing by saying I want to hear the views of the parties.
DC: Well, let me go back. Let me just readdress this.
MJ: Well, now first, since you’ve raised that issue let me say that Article 26(d) [UCMJ, 10 U.S.C. § 826(d)] and under R.C.M. 902, that your request for a recusal of the military judge is denied. The court finds that my impartiality might not reasonably be questioned and not only once, not only twice, but three or four times if necessary, to ensure that justice is done while I make decisions sua sponte.
*670 DC: I understand, Your Honor, thank you for your ruling and I take it then that my request for a mistrial is denied.
MJ: Well, I was going to get to that in a minute. You can go ahead and be seated for a moment. A military judge has the clear authority to either at the request of either party or sua sponte reconsider any prior ruling that is not amounting to a finding of not guilty. That’s what I’ve done in this case. This is certainly within my authority to do and reflects no partiality on my part. In fact, I think as I already made it clear, the prior judge had informed the parties that this could be reconsidered and I can only assume that she did so with the view towards the fact that as the evidence came out, the circumstances might change under which she had ruled to preclude that evidence. Primarily the court’s consideration is to ensure justice and that the court members are not misled. That would go for the prosecution or the defense. The court does not believe the accused is prejudiced in any way as the members have not yet even been instructed or heard argument. The defense could always offer evidence to rebut the Internet room chat if I were to permit it in, but I’ll hear the defense’s argument on that on the merits in a moment.
Let me address now the issue of the mistrial. Again, I’ve already stated the standard earlier in this case. The court finds that it’s manifestly not necessary in the interest of justice to grant the relief that the defense requests. The court finds that there are no circumstances which have occurred which cast substantial doubt upon the fairness or impartiality of the trial. So the motion for a mistrial is denied.
The chatroom evidence enhanced the government’s case. If the court members believed it was the appellant who was chatting with the purported lA-year-old girl, the transcript amounted to direct evidence suggesting the appellant had a sexual interest in underage females.
c. Characterization of Mr. Andrew Siske, Jr.’s Testimony
Mr. Siske was a government witness qualified by the court as an expert in “computer data recovery and analysis of computer systems.” He analyzed the computer media seized from the appellant and he testified in detail about what he found and how the media were configured. Mr. Siske’s testimony was important, in part, because he helped the government establish a link between the appellant and the child pornography evidence (based on where and how the images were stored on the various computer media seized). That link was especially important because the defense contended that at least some of the evidence, even though found in his government quarters, could not be connected to the appellant beyond a reasonable doubt.
The assistant trial counsel concluded her redirect examination of Mr. Siske by asking for an opinion that led to a significant exchange between the military judge and trial defense counsel:
Q: In your expert opinion, would you say that the accused had a collection of child pornography images?
A: Yes, I would.
ATC: No further questions, Your Honor.
DC: I’m going to object to that last opinion, Your Honor. I mean that’s for the members to decide those. His expert opinion there was a collection of child pornography images on the media seized [was proper], but I don’t think he can say the accused had a collection of child pornography media.
MJ: Let me make sure I understand your argument. Your argument is you don’t think that he can make the connection between the accused and these images? Because I think that’s what his testimony has been all about.
DC: I think that is the ultimate determination by the members and they can give his testimony whatever weight they determine.
MJ: I’ll instruct in that regard.
(Emphasis added.) The military judge proceeded to remind the members that they were the ultimate factfinders and no witness is permitted to draw conclusions on matters that only they, as members, can draw. He did not instruct the members that they *671 should disregard any comment he may have made expressing an opinion regarding the evidence.
4. Analysis
“An accused has a constitutional right to an impartial judge.” United States v. Wright, 52 M.J. 136, 140 (C.A.A.F.1999) (citing Ward v. Monroeville, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972)). Apart from the narrow grounds for disqualification of military judges in Article 26(d), UCMJ,[12] our framework for assessing impartiality is found in R.C.M. 902.
Our focus is on R.C.M. 902(a), which requires disqualification of a judge “in any proceeding in which that military judge’s impartiality might reasonably be questioned.” Our superior court has recognized that:
This is the same standard as applied under the federal civilian statute, 28 USC § 455(a). Under subsection (a), disqualification is required ‘in any proceeding in which [the] military judge’s impartiality might reasonably be questioned,’ even though the evidence does not establish actual bias. The appearance standard is designed to enhance public confidence in the integrity of the judicial system. The rule also serves to reassure the parties as to the fairness of the proceedings, because the line between bias in appearance and in reality may be so thin as to be indiscernible.
Quintanilla, 56 M.J. at 45 (citations omitted).
“When a military judge’s impartiality is challenged on appeal, the test is whether, taken as a whole in the context of this trial, a court-martial’s legality, fairness, and impartiality were put into doubt” by the military judge’s actions. United States v. Burton, 52 M.J. 223, 226 (C.A.A.F.2000) (alteration in original) (quoting United States v. Reynolds, 24 M.J. 261, 265 (C.M.A.1987)). This test “is objective, judged from the standpoint of a reasonable person observing the proceedings.” Burton, 52 M.J. at 226 (citing United States v. Ramos, 42 M.J. 392, 396 (C.A.A.F.1995)). “Our standard of review is abuse of discretion.” Burton, 52 M.J. at 226 (citing United States v. Rivers, 49 M.J. 434, 444 (C.A.A.F.1998)).
The trial defense counsel did not specifically move to disqualify the military judge under R.C.M. 902(a). However, the military judge construed the defense’s second mistrial motion to include a request that he disqualify himself. He specifically referred to Article 26(d), UCMJ, and R.C.M. 902 in finding that his own impartiality “might not reasonably be questioned.” We review that ruling for an abuse of discretion.
Considering the military judge’s actions as a whole in the context of this trial, we conclude that a reasonable person observing the proceedings would have doubts about the court-martial’s impartiality.[13] On his own motion, the military judge twice reversed rulings of the first military judge to admit evidence that was highly favorable to the government. Both times, trial defense coun *672 sel vigorously objected and moved for a mistrial. The military judge offered his characterization of the testimony of an important government witness, a personalized characterization favorable to the government. See United States v. Shackelford, 2 M.J. 17, 19 (C.M.A.1976) (commenting on “the tightrope over which a trial judge must tread” in assuring, on the one hand, that the court-martial members are provided the information they need while also “scrupulously avoiding even the slightest appearance of partiality”).
In the context of the entire trial, it is apparent that the second military judge was trying to move the ease forward expeditiously and he was occasionally exasperated by the failure of counsel for both sides to succinctly frame issues and objections. Perhaps his legitimate concerns about the progress of the trial caused him to interject himself too directly into the presentation of the evidence. Again, we do not ascribe any actual bias to the military judge. But, his actions created the appearance of partiality toward the government. He abused his discretion by not disqualifying himself under R.C.M. 902(a).
5. Remedy
“Neither [R.C.M.] 902(a) nor applicable federal, civilian standards mandate a particular remedy for situations in which an appellate court determines that a judge should have removed himself or herself from a case.” Quintanilla, 56 M.J. at 80. In assessing whether the drastic remedy of reversal is required, we use the considerations established by the Supreme Court in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) to determine whether a judgment should be vacated for a violation of 28 U.S.C. § 455(a).[14] Quintanilla, 56 M.J. at 80-81. See also Butcher, 56 M.J. at 92. The Supreme Court concluded that it is appropriate to consider:
1. The risk of injustice to the parties in the particular case;
2. The risk that the denial of relief will produce injustice in other cases; and,
3. The risk of undermining the public’s confidence in the judicial process.
Liljeberg, 486 U.S. at 864,108 S.Ct. 2194.
Appellate government counsel do not concede the military judge abandoned his impartiality. Recognizing that we might conclude otherwise, they contend that application of the Liljeberg considerations would not support reversal of Charge III. We agree only with respect to the second consideration'—we see no risk that denial of relief will produce injustice in other cases.
The military judge’s action with respect to Mrs. Johnston’s statement poses no risk of injustice to this appellant in light of our disposition of Charges I and II. However, his sua sponte reconsideration of the chat session transcript and his positive characterization of Mr. Siske’s testimony were directly related to Charge III. We find that the military judge’s actions were substantial and did pose a risk of injustice to the appellant in view of the circumstantial nature of the evidence.
The military judge’s actions with respect to Mrs. Johnston’s statement are relevant to our deliberation of the third Liljeberg consideration. Considered in the aggregate with the chat session transcript and Mr. Siske’s testimony, we find the military judge’s actions undermined public confidence in the judicial process.
Accordingly, we conclude that the findings of guilty to Charge III and its Specification must be set aside.[15]

Conclusion

The findings and sentence are set aside. The record is returned to The Judge Advocate General for remand to the convening authority. A rehearing may be ordered. If the convening authority finds that a rehear *673 ing is impracticable, he or she shall dismiss the charges.

. In conceding error as to Issue I, the government contends Issues II and III are moot.

. The military judge found that comment, in the form of an instruction, was warranted under Mil. R. Evid. 512(a)(2) because of the “unique” circumstances of the case.

. Cf. United States v. Scheurer, 62 M.J. 100, 112-13 (C.A.A.F.2005) (Crawford, J., concurring in part and dissenting in part).

. Our disposition of this issue renders Issues II and III moot.

. The defense had earlier moved for a mistrial based on the military judge's decision to admit Mrs. Johnson's statements.

. Our discussion and conclusion regarding the military judge’s impartiality encompass Issues V and VI.

. See Rule for Courts-Martial (R.C.M.) 902(b).

. See United States v. Butcher, 56 M.J. 87 (C.A.A.F.2001).

. See United States v. Quintanilla, 56 M.J. 37 (C.A.A.F.2001).

. The military judge asked a government witness clarifying questions that the appellant construes as supporting the prosecution. The military judge interrupted trial defense counsel, sua sponte, during opening statement and closing argument. His need to have done so is debatable, but not prejudicial error in either instance.

. The trial defense counsel did not specifically request the members be instructed that no inference may be drawn from the claim of privilege. Mil. R. Evid. 512(c).

. Article 26(d), UCMJ, provides, ”[n]o person is eligible to act as military judge in a case if he is the accuser or a witness for the prosecution or has acted as investigating officer or a counsel in the same case.”

. Issues VII and VIII concern the presentencing phase of the trial and are rendered moot by our action on the findings. We briefly note the circumstances underlying issue VII because they further reflect the tone of the proceeding. After a short inquiry into AFOSI SA Perret's qualifications, the assistant trial counsel asked the court to qualify him as an "expert in child abuse investigation including child pornography.” After conducting an effective voir dire of the witness, the trial defense counsel challenged his qualifications:
DC: Your Honor, I'm going to object to proffering this witness relevant to this testimony. I don’t believe he has the qualifications to sufficiently talk about ...
MJ: Overruled.
This ruling was clearly erroneous. In conceding error, appellate government counsel conclude that "it is difficult to see how SA Perret is qualified to be an expert in a case of possession of child pornography unassociated with child sexual abuse .... it does not appear that SA Perret had an appropriate basis for his opinion regarding Appellant's desire to have sex with children ... Additionally, no foundation was established to demonstrate the relevance of any of the discussion of child sexual abuse to Appellant’s case. Finally, other than his expressing some concern with where the [trial counsel] might be leading the witness, there is no evidence the military judge conducted the required balancing test un- . der Mil.R.Evid. 403.”

. "Any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.” 28 U.S.C. § 455(a) (2006).

. We need not address the appellant's contention that the findings and sentence be set aside under the cumulative error doctrine.