# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Master Sergeant KEVIN A. PEARSON**
**United States Army, Appellant**

ARMY 20170515

Headquarters, Fort Carson
Tiernan P. Dolan, Military Judge
Colonel Gregg A. Engler, Staff Judge Advocate

For Appellant: Captain Steven J. Dray, JA; William E. Cassara, Esquire (on brief and reply brief).

For Appellee: Colonel Steven Haight, JA; Major Hannah E. Kaufman, JA; Captain Meredith M. Picard, JA (on brief).

18 November 2019

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

We hold the military judge's sua sponte reversal of a government-favorable Military Rule of Evidence [Mil. R. Evid.] 412 ruling, during the defense's case-in-chief on the merits, was not untimely, and if untimely, did not materially prejudice appellant. We also hold the military judge did not abuse his discretion in denying two defense motions for his recusal. We do, however, hold the military judge's failure to advise appellant that a rape offense was barred by the statute of limitations was error but, in light of appellant's acquittal of this offense, the error did not materially prejudice appellant's rights.

A panel of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of rape and two specifications of assault consummated by a battery in violation of Articles 120 and

128, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 928 (2012) [UCMJ].[1] The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for twelve years, reduction to the grade of E-1, total forfeitures, and a reprimand.

This case is before us for review pursuant to Article 66, UCMJ. Appellant asserts five assignments of error, four of which merit discussion, but no relief.

## BACKGROUND

Appellant's court-martial involved two alleged rapes occurring twelve years apart against two different women. Appellant was found not guilty of raping HT in early February 2003. Appellant was found guilty of raping Sergeant (SGT) RD by penetrating her anus with his penis in late March 2015.

### Rape of SGT RD

Appellant and SGT RD met on an online dating application and frequently texted sexually explicit messages to each other. In late March 2015, the two agreed to meet for the first time at appellant's apartment to engage in consensual vaginal intercourse. Whether SGT RD agreed to being choked and engaging in consensual anal intercourse, however, is the crux of this case.

Sergeant RD testified that she agreed to go to appellant's apartment to engage in consensual vaginal intercourse. A thorough review of the substance and tenor of their text messages clearly establishes that SGT RD wanted to engage in consensual vaginal intercourse, but there was no meeting of the minds regarding anal intercourse. At one point in their text message exchange, appellant texts a one word question: "Anal?" Sergeant RD responds "idk [I don't know] we will see."

In the early morning hours, SGT RD arrived at appellant's apartment. She and appellant started to engage in consensual vaginal intercourse on his bed. In the middle of consensual vaginal intercourse, Sergeant RD testified appellant suddenly turned her over onto her stomach, choked her around the neck, forced her face into the bed, and inserted his penis into her anus. Sergeant RD testified she was unable to breathe or speak because of appellant's chokehold. Sergeant RD testified that appellant did not ask her permission to choke her or to engage in anal intercourse with her prior to his acts. After appellant engaged in anal intercourse with SGT RD for "a long while," he released his chokehold. Sergeant RD, now able to speak for the first time, stated "no," and "this isn't supposed to be like this." Appellant responded "You want it. You liked it." Sergeant RD, again, stated "No."

---

[1] After findings, but before sentencing, the military judge dismissed the two assault specifications as lesser-included offenses of the rape offense.

After this verbal exchange, appellant, again, started choking SGT RD. She, again, was unable to breathe or speak. Appellant also reinserted his penis into her anus. Appellant ejaculated into her anus stating "your ass is mine," and "this isn't the last time." Shortly after ejaculating, appellant fell asleep. Sergeant RD, still naked, went into his bathroom to put on her clothes. She observed blood and other fluid leaking from her anus. She placed toilet paper in the crotch of her pants, pulled up her pants, and departed appellant's apartment without putting on her underwear.

Sergeant RD returned to her home, flushed the toilet paper from the crotch of her pants, showered, changed clothes, and a few hours later sought medical treatment from a sexual assault nurse examiner (SANE). The SANE documented the existence of two tears in her anus. Sergeant RD did not initially report the rape to law enforcement personnel. Approximately a week after the offense, she changed her mind and reported the offense to agents from the Army Criminal Investigation Command (CID).

The CID agents asked SGT RD to text message appellant regarding the events surrounding the offense. During this text message exchange, appellant admitted to choking SGT RD "a little," and engaging in sexual activity with her. He also asked her if he "should [take his] kids to there [sic] mom's and wait to be arrested?" Appellant further admitted, in an interview with CID agents, to engaging in anal intercourse, choking SGT RD, and stating "things got intense."

The only divergent material fact between SGT RD and appellant's version of events is whether she consented to being choked and engaging in anal intercourse. We pause to note that the remarkable similarity between their two versions of events makes this case not only unique but also aids in our analysis of appellant's asserted legal errors and any alleged prejudice therein.

*Mil. R. Evid. 412 Ruling Regarding SGT RD's Underwear*

As part of the investigation, CID agents collected, a week after the offense, the underwear and pants that SGT RD wore the morning of the offense. DNA testing was not conducted on her pants. DNA testing was conducted on her underwear. Appellant's DNA was not found on her underwear. An unknown semen donor's DNA was found on her underwear.

Prior to trial, the defense moved to admit "that semen not belonging to [appellant] was found in [SGT RD's] underwear": (1) as a possible source of injury from someone other than appellant under Mil R. Evid. 412(b)(1)(A); and (2) to impeach SGT RD's credibility that she was lying about the sexual assault by appellant to protect a relationship with the unknown semen donor under Mil R. Evid.

412(b)(1)(C).[2]  The military judge denied the defense motion under both prongs but ruled:

> [The CID agent] testified that the underwear at issue as being stained by what appeared to be "blood, feces and semen."  If this evidence is presented, the defense argument that it should be allowed to show that someone other than [appellant] deposited the semen makes sense.  Similarly, the defense would be entitled to show that someone other than [appellant] caused the injury that resulted in the bloodstained underwear.  Whether evidence of the underwear's condition goes to the factfinder is in the government's hands.  Should the government open the door, the defense is invited to renew its motion . . . .

The military judge's ruling was not a pro se prohibition on presenting evidence regarding the unknown semen donor's DNA, but instead conditioned the evidence's admission upon its relevance in relation to the evidence admitted by the government at trial.[3]

---

[2] Military Rule of Evidence 412(a) prohibits "evidence offered to prove that any alleged victim engaged in other sexual behavior," and "evidence offered to prove any alleged victim's sexual predisposition."  However, Mil. R. Evid. 412(b) provides three exceptions to the general rule of exclusion.  The first of those exceptions, Mil. R. Evid. 412(b)(1)(A), provides an exception for "evidence of specific instances of sexual behavior by an alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence."  The third exception, Mil. R. Evid. 412(b)(1)(C), provides an exception for "evidence the exclusion of which would violate the constitutional rights of the accused."

[3] The test for relevance under Mil. R. Evid. 401 is whether the evidence "(a) [h]as any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  However, relevant evidence may be excluded under Mil. R. Evid. 403 if the military judge finds "its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence."

Military Rule of Evidence 412(c)(3) requires the military judge to conduct a Mil. R. Evid. 403 analysis.  *See United States v. Ellerbrock,* 70 M.J. 314, 320 (C.A.A.F. 2011) (The Mil. R. Evid. 403 balancing test is the final step in deciding whether evidence under Mil. R. Evid. 412 should be admitted); *see also United States v.*

(continued . . .)

4

During the government's direct examination of SGT RD at trial, she testified that she was leaking blood and "fluid" after the anal rape. She did not testify that she was leaking semen. The defense, however, did not renew its motion to admit evidence of the unknown semen donor's DNA under an alternate source of injury theory during the presentation of the government's case-in-chief on the merits.[4] During the defense's case-in-chief on the merits, a CID agent testified about collecting SGT RD's underwear. After the CID agent's testimony, the military judge sua sponte directed an Article 39(a), UCMJ session to reconsider his Mil. R. Evid. 412 ruling.

The military judge then discussed, in-depth, the evidence presented at the motion hearing as contrasted to the evidence presented at trial and the questions posed by the panel to SGT RD after her testimony. The military judge asserted "[t]he difficulty with issuing a [Mil. R. Evid.] 412 ruling pretrial is that often the facts don't play out at trial as the parties anticipate they will in the motions sessions." After allowing argument from the parties, the military judge reconsidered his ruling, reversed course, and ruled the defense could present evidence that SGT RD's underwear contained DNA from an unknown semen donor under an alternate source of injury theory.[5]

---

(. . . continued)

*Gaddis*, 70 M.J. 248, 257 (C.A.A.F. 2011) ("If after application of [Mil. R. Evid. 403] factors the military judge determines that the probative value of the proffered evidence outweighs the danger of unfair prejudice, it is admissible.").

[4] During the government's case-in-chief at trial, the defense renewed its motion for the military judge to reconsider his Mil. R. Evid. 412 ruling regarding admitting the underwear to impeach SGT RD's credibility. The defense did not directly request the military judge reconsider admitting the underwear under Mil. R. Evid. 412(b)(1)(A) as a possible source of injury from someone other than appellant.

[5] The military judge's ruling is as follows:

> I've re-read the [initial] ruling and find I place undue attention to the issue of hiding the identity of the unknown paramour, and I analyzed the issue largely in context, which frankly, defense focused me on . . . [the] jealous paramour and motive to fabricate. . . . [B]ut the gist of this issue boils down to alternate source of injury and I cannot escape the conclusion that in light of the testimony of [SGT RD], the defense is entitled to present evidence potentially pointing to an alternate source of injury . . . .

After the military judge's new ruling, the defense presented testimony from a CID agent that an unknown semen donor's DNA existed on SGT RD's underwear. The defense also presented telephonic testimony from the DNA expert, who tested the underwear, that an unknown semen donor's DNA was present on the underwear. The defense did not request to recall SGT RD or the SANE nurse for cross-examination. During closing argument, defense counsel argued the government failed to answer "a huge question" as to the identity of the unknown semen donor and asserted that person caused SGT RD's injuries.

### Motion to Recuse the Military Judge for Bias

Defense filed two motions, one immediately prior to the contested trial and one in the middle of trial, seeking recusal of the military judge because of his alleged bias. Both motions were denied. Appellant now asserts the military judge erred in denying the recusal motions and he was biased against defense, or could be perceived as such, as evidenced by his rulings and interactions with defense.

### First Recusal Motion

Days prior to the commencement of appellant's contested trial, after months of pretrial motion hearings and rulings, the defense filed a motion for the military judge's recusal. The main thrust of the recusal request focused on the military judge's admonishment of defense counsel, occurring weeks earlier, for creating a hard copy transcript of a closed hearing by sending an audio file to a third party.

The issue with the audio file derived from the first hearing regarding the admission of SGT RD's underwear. The military judge closed the hearing and sealed the related motions and transcript. After the hearing the defense requested, through a series of emails with the military judge's clerk of court, that they receive the audio files of the sealed hearing. The defense counsel did not discuss in the emails that the audio files would be sent to a third party for transcription and the creation of a hard copy verbatim transcript. The military judge found "the court, [through his clerk], granted the defense request for copies of the audio files . . . so that it could [only] listen to them," and "[t]he defense mislead [sic] the court when it sought and received permission to have copies of the audio files." The court then stated to the three defense counsel, in an Article 39(a), UCMJ session, that "[t]his court admonishes you for misleading the court and disclosing the contents of a closed hearing to an outside party." No further admonishment or disciplinary action was taken against the three defense counsel.

Defense also asserted in their recusal motion that the military judge's bias was evidenced "within his rulings." Defense then listed several denied defense motions, including the pre-trial Mil. R. Evid. 412 rulings. Defense argued the military judge "has excluded evidence from presentation at trail [sic] that would

result in [appellant's] acquittal." The defense asserted the military judge was biased because he noted the lack of evidence presented by the defense or discussed the defense's failure to follow the court's direction in some rulings. The defense asserted the military judge's description of one of their motions as "stray[ing] uncomfortably close to the border between a weak motion and a frivolous motion," was unnecessary and indicia of his bias.

In denying the recusal motion, the military judge stated his rulings were "what the facts and law dictated" and not "based on anything resembling personal animus towards the defense [counsel or appellant]." The military judge then twice invited the defense counsel to voir dire him regarding his impartiality, but defense declined his offers.

### Second Recusal Motion

During the defense counsel's cross-examination of HT regarding her alleged statements to law enforcement and medical personnel contained in their written reports, she consistently responded "I do not remember." After approximately a half hour of cross-examination and the same response by HT to every defense question, the military judge directed an Article 39(a), UCMJ session. The military judge then stated he did not want to prevent the defense's cross-examination, but their method was becoming tedious, time consuming, and it was clear that HT's memory was not going to be refreshed as to any single statement she made to anyone. The military judge proposed a streamlined approach. The military judge recognized he was attempting "to get some judicial economy going here [but] . . . I want to make sure both parties are okay going this way."

After the parties agreed to the streamlined approach, the panel was recalled, but the defense continued to cross-examine HT using the same time consuming method as before. HT, again, consistently responded "I don't remember" to the defense questions. Eventually, the government objected under Mil. R. Evid. 403, which the military judge sustained and then provided his legal analysis in front of the panel. The military judge then denied a defense requested Article 39(a), UCMJ session. The defense then renewed its recusal motion because the military judge denied the Article 39(a), UCMJ session and for stating the basis of his Mil. R. Evid. 403 ruling in front of the panel.[6] Again, the military judge denied the motion and

---

[6] Although not presented as grounds for recusal at trial, appellant now asserts on appeal that several other additional rulings and interactions by the military judge establish his alleged bias. One of appellant's new grounds is "[o]f the 28 objections lodged by the government counsel during cross-examination [of SGT RD], the [m]ilitary [j]udge sustained 20 of them, frequently without allowing a response from the defense."

twice invited the defense counsel to voir dire him regarding his impartiality, but defense counsel declined his offers.

### *The Rape of HT, the Statute of Limitations, and Ineffective Assistance of Counsel (IAC)*

No statute of limitations existed for the alleged rape of HT at the time of appellant's court-martial. Defense counsel did not submit a motion to dismiss the charged rape of HT under the statute of limitations. The military judge did not advise appellant that the statute of limitations applied to the alleged rape of HT.

The defense did file a motion to sever the two charges involving HT and SGT RD, requesting a separate court-martial regarding each alleged victim. The military judge denied the motion to sever but stated he would use corrective instructions and methods to ensure there was no impermissible spillage between the two separate allegations.

Four months after the adjournment of appellant's court-martial, our Superior Court determined a five-year statute of limitations applied to the HT rape offense.

## LAW AND DISCUSSION

### *A. Military Rule of Evidence 412 Ruling*

A decision to admit evidence is reviewed for an abuse of discretion. *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F. 2003). "[A] military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995).

Except as otherwise provided in Mil. R. Evid. 412, evidence of a victim's sexual behavior is inadmissible. Mil. R. Evid. 412(a). As a rule of exclusion, appellant bears the burden of demonstrating why the general prohibition of Mil. R. Evid. 412(a) should have been lifted. *United States v. Banker*, 60 M.J. 216, 222 (C.A.A.F. 2004) (citing *United States v. Moulton*, 47 M.J. 227, 228 (C.A.A.F. 1997)). The three enumerated exceptions of Mil. R. Evid. 412(a) allow evidence of other sexual behavior if the evidence is necessary to "prove that a person other than the accused was the source of semen," Mil. R. Evid. 412(b)(1)(A), to prove "consent" of the victim, Mil. R. Evid. 412(b)(1)(B), or because exclusion of the evidence "would violate the constitutional rights of the accused," Mil. R. Evid. 412 (b)(1)(C).

Appellant does not assert the military judge's ultimate ruling was error – it permitted admission of the defense requested evidence – but instead insists the timing of the ruling created error. Appellant fails to cite any authority for the novel

position that an appellate error remains when a ruling permitted admission of the defense requested evidence. We do not find error now exists because of the timing of the military judge's defense favorable ruling.[7] Even if error existed, however, we pause now to analyze the alleged prejudice to appellant.

Despite the admission of the evidence and the ability to argue one of several defense theories of the case based on that evidence in closing argument, appellant alleges prejudice because: (1) he could not discuss the evidence during his opening statement; (2) he was allegedly unable to cross-examine SGT RD and the SANE regarding the underwear; and (3) the defense DNA expert was required to testify by telephone.

In analyzing appellant's prejudice claim, a review of the probative value of the evidence is necessary. We recognize a voluminous amount of questions and controversy surrounded SGT RD's underwear. Did she or did she not wear the underwear home from appellant's apartment? Did CID agents collect the "correct" pair of underwear a week after the alleged offense? Most importantly, who was the unknown semen donor?

The answer to these questions would have been much more relevant had appellant not admitted in text messages and to CID agents that he choked SGT RD and engaged in anal intercourse with her. As such, the only issue in contest was the consensual nature of the acts. Despite the evidence's decreased probative value, in light of appellant's admissions, evidence that male DNA, not the accused's, existed on SGT RD's underwear was admitted for the panel's consideration during deliberations. This alone greatly undermines appellant's assertion of prejudice.

Further, to address appellant's specific concerns, we note that opening statements are not evidence. *See United States v. Taylor*, 53 M.J. 195, 197-99 (C.A.A.F. 2000). An opening statement is counsel's recital of what he expects the evidence will show. In fact, military judges instruct the panel as such. *See* Dep't Army, Pam 27-9, Legal Services: Military Judges' Benchbook, para. 2-5-5 (1 Sep. 2014) [Benchbook]. Whether or not appellant was able to discuss SGT RD's underwear in opening statement is of no consequence, because such a statement is not evidence.

---

[7] The military judge's initial Mil. R. Evid. 412 ruling permitted, "[s]hould the government open the door" at trial, for "the defense to renew its motion." The defense did not renew its motion at trial under a possible source of injury theory. In light of defense's failure to reassert its motion, despite the military judge's written ruling contemplating such a possibility, we find the timing of the military judge's sua sponte reconsideration was not error.

Regarding to appellant's contention that he was unable to cross-examine SGT RD and the SANE regarding the underwear, defense counsel could have chosen to request to recall SGT RD and the SANE for cross-examination based on the changed nature of the military judge's ruling. They failed to do such. Accordingly, we find no error on the part of the military judge, as nothing in his ruling precluded further defense examination of the two witnesses, nor do we find appellant was prejudiced. *See* UCMJ art. 59(a).

Finally, as to the telephonic testimony of the DNA expert, she was initially present at trial but departed to another state prior to the military judge reversing his ruling. The expert's departure generated a discussion between the military judge and the parties as to the form of her testimony. The defense counsel asserted the expert's testimony would "most likely [be] telephonic." The military judge stated if the defense was not amenable to telephonic testimony to let him know for scheduling purposes, providing defense counsel with, at a minimum, an opportunity to request a continuance to obtain the expert's physical presence. The defense did not request a continuance nor did they object to the expert's telephonic testimony, but requested the military judge instruct the panel as to the reason for the telephonic testimony.[8]

Appellant does not explain how the expert's testimony, as to the unconverted fact that an unknown semen donor's DNA was present in SGT RD's underwear, would have been more probative if provided in-person as opposed to her telephonic appearance. Even if her in-person testimony could be deemed as being more probative, appellant did not demand in-person testimony and received his only requested relief—an instruction from the military judge advising the members as to the appropriateness of telephonic testimony.

### B. Military Judge's Recusal

We next turn to appellant's claim the military judge was biased and erred in denying the defense's two recusal motions. "An accused has a constitutional right to an impartial judge." *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001) (quoting *United States v. Wright*, 52 M.J. 136, 140 (C.A.A.F. 1999)). "There is a strong presumption that a military judge is impartial in the conduct of judicial proceedings." *United States v. Foster*, 64 M.J. 331, 332 (C.A.A.F. 2007) (citing *United States v. Quintanilla*, 56 M.J. 37, 43 (C.A.A.F. 2001)).

---

[8] Based on defense's request, the military judge instructed the panel, without objection from counsel, that the "telephon[ic] presentation of evidence is perfectly appropriate. In this case, it's necessary because due to a decision I had erroneously issued earlier the witness was allowed to fly [home]. So, she's being recalled. She'd be here in person but for my error."

"[W]hen a military judge's impartiality is challenged on appeal, the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt, by the military judge's actions." *United States v. Martinez*, 70 M.J. 154, 157-58 (C.A.A.F. 2011) (quoting *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000) (internal quotation marks omitted). A military judge's disqualification decision is reviewed for an abuse of discretion. *United States v. Sullivan*, 74 M.J. 448, 453 (C.A.A.F. 2015) (citing *United States v. McIlwain*, 66 M.J. 312, 314 (C.A.A.F. 2008)). "A military judge's ruling constitutes an abuse of discretion if it is arbitrary, fanciful, clearly unreasonable or clearly erroneous, not if this court merely would reach a different conclusion." *Sullivan*, 74 M.J. at 453 (internal quotations and citations omitted).

Rule for Courts-Martial [R.C.M.] 902 generally provides two bases for disqualification of a military judge. Under R.C.M. 902(a), "a military judge shall disqualify himself or herself in any proceeding in which the military judge's impartiality might reasonably be questioned." *See also Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) ("The standard for identifying the appearance of bias is objective."). This court looks to whether the "judicial conduct impeache[d] the integrity of the proceedings." *United States v. Johnston*, 63 M.J. 666, 671 (A.F. Ct. Crim. App. 2006).

Under R.C.M. 902(b)(1), a military judge shall also disqualify himself or herself if they "[have] a personal bias or prejudice concerning a party . . . ." A military judge "should broadly construe grounds for challenge but should not step down from a case unnecessarily." R.C.M. 902 Discussion.

We find the military judge did not abuse his discretion denying the defense recusal motions. "The military judge is the presiding authority in a court-martial and is responsible for ensuring that a fair trial is conducted." *Quintanilla*, 56 M.J. at 41 (citing UCMJ art. 26; R.C.M. 801(a) Discussion). "The judge has broad discretion in carrying out this responsibility. . . ." *Id.* (citations omitted). After our review of the entire record, we find the military judge was not biased, nor could he be perceived as biased, based on his rulings or interactions with defense.

Appellant's trial involved numerous written and oral motions by the parties and rulings by the military judge. Depending on the applicable law and facts, the military judge sometimes ruled in favor of the government and, at other times, he ruled in favor of the defense. Our review of the record establishes the military judge consistently allowed defense additional argument on motions.[9] The military judge's

---

[9] In one instance, during a Mil. R. Evid. 412 hearing regarding HT, which consisted of witness testimony, examination by the defense counsel, trial counsel, civilian

(continued . . .)

11

sua sponte reconsideration of a government favorable Mil. R. Evid. 412 ruling, which he reversed, and then issued a defense favorable ruling appears to undermine appellant's assertion that the military judge was, or could be perceived as, biased against appellant. Determining whether a military judge is biased, or could be perceived as such, however, is not a mathematical equation resolved based on the percentage of rulings granted for the defense or government but instead requires a holistic review of the entire record.

We now discuss in order the first recusal motion, the second recusal motion, and the new grounds raised by appellant for the first time on appeal.

### 1. First Recusal Motion

Having found the military judge was not biased, nor could he be perceived as biased, after our review of his overall rulings and interactions with defense throughout the entire trial, we pause to specifically address the main thrust of defense's first recusal motion. Appellant asserts in his brief that the military judge's admonishment of counsel for producing a hard copy transcript of a closed hearing was "the most egregious example of [his] bias."

We find the military judge's factual finding that defense counsel did not disclose to him or his clerk of court the intent to have a third party produce a hard copy verbatim transcript of a closed session from audio files was not clearly erroneous. Appellant substantiates the military judge's factual finding in his brief to this court stating "nothing in the emails indicated what the defense wished to do with the [audio] files."

This court has closely reviewed the series of emails exchanged between defense counsel and the clerk of court. The emails focus on the defense "trying to listen to the audio," lacking the correct computer program, and that the files "wouldn't play." There is nothing in the substance, or more importantly the tenor, of the emails to suggest the defense counsel intended to use the audio files in any manner beyond personally listening to the audio.

Motion hearings involving Mil. R. Evid. 412 evidence must be sealed and the military judge closed the session involving the relevant audio files. *See* Mil. R. Evid. 412(c)(2) (stating "[t]he motion, related papers, and the record of the hearing

---

(. . . continued)
special victim counsel, and the military judge, followed by argument by all three counsel, the military judge stated, "Defense, I'm going to give you the last word . . . ." The military judge even suggested to the defense that the evidence they were seeking to admit might be admissible under Mil. R. Evid. 608(b).

must be sealed . . . and remain under seal unless the military judge . . . orders otherwise"). Considering the rule's clear-cut directive and the implied intent derived from the emails that defense counsel intended merely to listen to the audio, we question counsel's ostrich-like, head-buried-in-the-sand, approach of releasing the audio files to a third party for transcription and production of a verbatim transcript without explicitly revealing such a plan and receiving approval from the military judge. At a minimum, the military judge clearly believed the defense counsel misled him and his clerk of court as to the intended use of the audio files.

Even if the military judge was clearly erroneous in finding that the defense counsel misled him, the mere facts, as agreed to by appellant in his brief, provided sufficient grounds for the military judge to admonish defense counsel for failing to receive his explicit approval to release the audio files to a third party, as required by R.C.M. 1103A.[10]

Additionally, the nature of the admonishment was extremely attenuated. The entire admonishment consisted of the military judge stating during an Article 39(a) session the three defense counsel's names and saying "this court admonishes you for misleading the court and disclosing the contents of a closed hearing to an outside party. Do you have any questions? In the absence of any questions, we'll move on." No further admonishment or disciplinary action was taken against the three defense counsel. We find the military judge's limited admonishment, under the circumstances, as an appropriate use of his authority under R.C.M. 801 and not indicia of any real or perceived bias.

*2. Second Recusal Motion*

The defense filed a second recusal motion during trial because: (1) the military judge sustained a government Mil. R. Evid. 403 objection, ruling in the panel's presence, regarding the continued cross-examination of HT, and (2) the military judge immediately denied a defense requested Article 39(a) session regarding his ruling. The Mil. R. Evid. 403 ruling provided in the panel's presence is as follows.

> The probative value is not there, there's not a single prior inconsistent statement elicited so far, not one. What you've elicited is a lack of memory over the course of 40 minutes . . . . [I] find the probative value to be scant, I find the subject and repetitive nature of it and the

---

[10] Rule for Courts-Martial 1103A(b)(2) requires that "[p]rior to the authentication of the record of trial by the military judge, sealed materials may not be examined in the absence of an order from the military judge based on good cause shown."

obviousness of it to be a waste of the members' time, if
not confusing, and for that reason I'm asking you to shut it
down and move on.

Several minutes later, at the conclusion of HT's cross-examination, an Article 39(a), session occurred. The military judge expanded his Mil. R. Evid. 403 analysis, clarifying that the defense had made their point regarding HT "in spades," and it was "as though she had been coached on how to avoid providing a prior inconsistent statement. It's the darnedest thing." The military judge proffered to provide, if defense requested, a curative instruction to the members regarding his ruling.

First, it is hard to discern any actual or perceived bias by the military judge towards defense when the essence of his ruling indicated that HT's lack of memory regarding the alleged offense had obviously been elicited based on her repetitive response of "I don't remember." From our review, the overall substance of the military judge's analysis, if not the actual ruling, was favorable to the defense.[11]

We do not find the military judge biased, nor could he reasonably be perceived as such, for sustaining a government objection to cease the defense's unduly time-consuming, repetitive, and to use a colloquial phrase, killing-a-dead-horse, cross-examination of HT. This is especially true after the defense agreed to a streamlined method, which was not utilized, but instead continued to proceed in the same manner asking numerous similarly-themed cross-examination questions resulting in the same response from HT. The military judge's denial of a defense requested Article 39(a) session, under these circumstances, was a valid use of his authority under R.C.M. 801 to "exercise reasonable control over the proceedings to promote the purposes of [the] rules," in this case Mil. R. Evid. 403, to prevent a waste of time or confusion by the members. Although not specifically stated by the military judge, the danger of presenting cumulative evidence also certainly lingered.

The military judge's offer to provide, with defense input, and then the provision of a curative instruction, without objection from defense, likewise negates appellant's assertion of bias. The military judge instructed the panel:

> You must disregard any comment or statement or
> expression made by me during the course of the trial that
> might seem to indicate an opinion on my part . . . . [N]ow
> during [HT's] examination, you heard me use words like

---

[11] The panel's acquittal of the charged rape against HT indicates appellant was not prejudiced by the military judge's ruling to cease the cross-examination of HT regarding her lack of memory. Perhaps the panel, like the military judge, concluded the point regarding HT's lack of memory had been made "in spades."

'probative value' and 'waste of time,' I don't want you to read anything into the use of those terms. They're part of a legal formula this court is required to apply. So to that end, you must disregard any comment or statement or expression made by me during the course of the trial that might seem to indicate any opinion about my part as to the advocacy of any lawyers' presentation, for that too, is a matter solely for you to resolve.

This instruction cured the potential for any negative impression of defense counsel created by the military judge in advising defense to move on for failing to present further probative evidence and wasting the panel's time.

### 3. New Grounds on Appeal

Appellant argues the military judge appeared biased when he "sua sponte instructed the members about evidence they could have requested following closing arguments over defense objection." During closing argument on the merits, defense counsel asserted the government did not provide the members with the video of appellant's interview with CID agents. Counsel stated the government did not want the panel to have the full picture and encouraged the panel "to hold that against the government because they're *preventing* you from seeing the complete picture." (emphasis added). The military judge did not interrupt defense counsel's argument but addressed his concern, in an Article 39(a) session, with the use of the word "prevent." After hearing argument from counsel, the military judge instructed the panel as follows:

> [Y]ou've heard mention of a video recording of [appellant's] interrogation by CID. It is, as I understand it, five hours long. You're not prevented and no one has prevented you from viewing this interrogation should you desire to view it.[12]

We note the defense did not file a motion to recuse the military judge based on this instruction at trial. This instruction is consistent with R.C.M. 801(c) which states "*The court-martial* may act to obtain evidence in addition to that presented by the parties." (emphasis added). We find the military judge's instruction regarding the defense counsel's use of the word "prevent," an appropriate remedy to cure such a misleading statement to the panel.

---

[12] The panel did not ultimately desire to view the video and it was not admitted into evidence.

### C. Rape of HT, the Statute of Limitations, and IAC

Appellant asserts the military judge erred by failing to advise appellant that the charged rape of HT was barred by the statute of limitations and his defense counsel were ineffective for failing to submit a motion to dismiss the offense under the statute of limitations.

The applicable statute of limitations is a question of law which appellate courts review de novo. *United States v. Mangahas*, 77 M.J. 220, 222 (C.A.A.F. 2018) (citations admitted). To establish ineffective assistance of counsel, an appellant must demonstrate both (1) his counsel's performance was deficient, and (2) the deficiency resulted in prejudice. *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

A similar statute of limitations issue was addressed by our Superior Court in *United States v. Briggs*, 78 M.J. 289 (C.A.A.F. 2019). In *Briggs*, the accused was convicted of a rape alleged to have occurred in 2005 but the offense was not referred for court-martial until 2013. *Id.* at 290-91. In 2006, Congress amended Article 43, UCMJ to provide that the offense of rape "may be tried and punished at any time without limitation." *Id.*[13] Our Superior Court, however, held that the applicable statute of limitations is the one that was in effect at the time of the offense and determined that in 2005 the applicable limit was five years. *Id.* at 293; *see also Mangahas*, 77 M.J. at 222 (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970)).

Our Superior Court next reviewed the case for plain error because Briggs did not raise the issue at trial and the military judge did not inform him of the right to raise the statute of limitations, as required by R.C.M. 907(b)(2)(B). *Id.* at 295.[14] Our Superior Court held "[i]t was clear and obvious error – at least as assessed in hindsight on appeal, entertaining the fiction that *Mangahas* had been decided at the time of [a]ppellant's court-martial – for the military judge not to inform [a]ppellant of the five-year period of limitation." *Id.* at 296.

---

[13] *See also* National Defense Authorization Act for Fiscal Year 2006 (NDAA FY 2006), Pub. L. No. 109-163, § 553, 119 Stat. 3136, 3264 (2006).

[14] To establish plain error, an appellant must show "(1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *United States v. Armstrong*, 77 M.J. 465, 469 (C.A.A.F. 2018) (internal quotation marks and citation omitted). Plain error is assessed at the time of appeal. *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008).

As in *Briggs*, assessing the appellant's case in hindsight, we find the military judge committed a clear and obvious error by failing to inform appellant that a five-year period of limitation existed for the alleged rape of HT.[15] If appellant had been convicted of raping HT, we would have, in accordance with *Briggs*, reversed appellant's conviction for that offense. Appellant, however, requests reversal of his conviction for raping SGT RD because the alleged rape of HT was tried in conjunction with the rape of SGT RD.

Appellant fails to cite any military authority for the proposition that an error regarding the statute of limitations for one offense, upon which appellant was acquitted, should constitute error and prejudice as to another offense of which he was convicted. Appellant encourages us to apply the reasoning from a Second Circuit federal case to this issue of first impression in the military. *See United States v. Hamilton*, 334 F.3d 170, 182 (2d Cir. 2003) (utilizing a three-prong test to analyze spillover prejudice for convictions reversed on appeal).

We decline appellant's request to adopt the *Hamilton* three-prong test because that case, involving prejudicial spillover for convictions set aside after trial, is inapplicable to the present situation where the panel acquitted appellant of the charged rape of HT. As stated in *Hamilton* "where the record indicates that the jury was able to distinguish between counts . . . and to assess separately the evidence pertinent to each, we have found no basis for concluding that a new trial was warranted because of prejudicial spillover. The absence of such spillover is most readily inferable where the jury has convicted a defendant on some counts but not on others." *Id.* at 183 (citations omitted). Even if the absence of prejudice in appellant's case was not "readily inferable" from the panel's acquittal of the charged rape of HT, the military judge's numerous spillover instructions negated prejudice concerns.

Prior to the contested trial, the defense filed a motion to sever the two charges involving HT and SGT RD and to conduct a separate court-martial regarding each alleged victim. The military judge denied the motion to sever but used corrective

---

[15] Having found the military judge erred, we need not decide whether appellant's counsel were deficient, but instead focus our attention on whether the military judge's error and counsel's performance, assuming it was deficient, prejudiced appellant. *See Green*, 68 M.J. at 362. (Appellate courts "may address these prongs in any order because . . . [an] appellant must meet both to prevail on a claim of ineffective assistance of counsel."). At a minimum, appellant's counsel were cognizant of potential statute of limitation bars as evidenced by their assertion to the military judge that any lesser-included-offense as to the rape of HT was barred by the statute of limitations.

instructions and measures to ensure there was no impermissible spillage between the two separate allegations.[16]

Pursuant to his ruling, the military judge provided the spillover instruction to the panel at the beginning, middle, and end of the contested trial on the merits.[17] *See United States v. Sewell*, 76 M.J. 14, 19 (C.A.A.F. 2017) (recognizing panels are presumed to follow the military judge's instructions). As to corrective measures, the government, at the start of its opening statement, made it clear the trial involved "two separate cases involving women who have never met each other and [those offenses] should be considered absolutely separate." The government continued this theme in its closing argument referencing the spillover instructions provided by the military judge and stating the panel should consider "[the] two [offenses] differently" and the rape of HT was "entirely separate" from the rape of SGT RD.

In light of the panel's acquittal of the charged rape of HT, the military judge's spillover instructions, and the government's argument to consider the two offenses separately, we find appellant has failed to meet his burden to establish that he was prejudiced by either the military judge's failure to advise him that the charged rape of HT was barred by the statute of limitations or his defense counsel's failure to submit a motion to dismiss under the statute of limitations.

## CONCLUSION

The findings of guilty and sentence are AFFIRMED.

Senior Judge BURTON and Judge RODRIGUEZ concur.

---

[16] The military judge's ruling denying severance comports with the R.C.M. 601(e)(2) Discussion stating "ordinarily all known charges should be referred to a single court-martial." *See also United States v. Southworth*, 50 M.J. 74, 76 (C.A.A.F. 1999). The military judge's ruling also highlights that the alleged rapes of HT and SGT RD, as charged offenses, were not admissible for propensity purposes against each other under Mil. R. Evid. 413. *See United States v. Hills*, 75 M.J. 350, 352 (C.A.A.F. 2016) (holding the application of Mil. R. Evid. 413 to other charged offenses is not appropriate). The military judge recognized "[i]f the allegations are severed, however, the [HT] allegation would likely be admissible towards the [SGT RD] allegations, or vice versa, [under] Mil. R. Evid. 413. Ironically, granting severance in this case would almost certainly cause the very harm the defense seeks to avoid."

[17] *See* Benchbook, para. 7-17 ("Spillover" instruction to panel members not to use the facts of one charged offense to prove another).

PEARSON—ARMY 20170515

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court